UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>NELLI KESOYAN,<br><br>            Defendant. | No.  2:15-cr-00236-GEB<br><br>TENATIVE FINDINGS UNDER § 3C1.1 AND RULING SUSTAINING THE UNITED STATES' OBJECTION TO THE PRESENTENCE REPORT |

The United States seeks in its sentencing memorandum two specific judicial findings opined to justify increasing Defendant Nelli Kesoyan's ("Defendant or Kesoyan") offense level by the two levels for perjury recommended by the probation officer in the Presentence Report ("PSR").  Gov't Sent. Memo., ECF No. 218.  Separately, the United States objects to the probation officer's decision that an additional two offense level enhancement under USSG § 2J1.2(b)(3), for alteration of essential or especially probative records, does not apply.  Gov't's Formal Objs. to PSR, ECF No. 213.

The probation officer recommends increasing Defendant's offense level by two levels for perjury based on false testimony Defendant gave during trial.  PSR ¶ 29, ECF No. 210.  The United States argues this perjury enhancement applies, and to justify it the United States requests the Court to "expressly find that '(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent.'"  Gov't Sent. Memo. at 6:6 (quoting United States v. Johnson, 812 F.3d 757, 761 (9th Cir. 2016)).  The

1

United States "requests that the Court make specific findings as to two particular false statements made by Kesoyan: (1) she believed Movsesyan lived at Bagdasaryan's home, and (2) she was coerced into confessing when agents threatened her and yelled at her." Gov't's Sent. Memo. at 6:8-10. The following findings justify application of a two offense level enhancement for obstruction of justice.

The United States is correct in its following statements about the first stated lie:

> The first lie, that Kesoyan believed Movsesyan lived at the address, was material because it went directly to an element of the conspiracy count, whether Kesoyan joined in the conspiracy knowing of its goals and intended to help accomplish them . . . . Kesoyan's professed lack of knowledge was central to her entire defense. To that end, Kesoyan repeatedly testified that she believed Movsesyan lived with Bagdasaryan because that was what she was told by Movsesyan, Bagdasaryan, and her husband. See, e.g., Exhibit 1 at 9. As evidence at trial showed, however, Kesoyan was aware that Movsesyan did not live at the address and her testimony to the contrary was false. For example, Kesoyan was captured on recordings telling Bagdasaryan to lie to immigration officers, including that Movsesyan lived at the home. Exhibit 3. As evident from the recordings, Bagdasaryan did not know who Movseyan was and could not even identify a photo of him without Kesoyan's assistance. Id. Kesoyan also stated that her use of the false address on the third [Social Security Administration ("SSA")] letter was only a "typo" made when Movsesyan was talking in her ear on the phone. See, e.g., Exhibit 1 at 61. Kesoyan . . . recant[ed] this assertion, however, when confronted with phone records showing it was false. Id. at 62. Kesoyan's entire defense was founded on her false testimony that she believed Movsesyan lived at the address, testimony Kesoyan willfully and intentionally repeated multiple times at trial.

2

Gov't's Sent. Memo. at 6:11-25.  When Kesoyan testified falsely about believing that Movsesyan lived with Bagdasaryan, this testimony constituted "'material' statement[s, meaning] 'if believed, [it] would tend to influence or affect the issue under determination.'"  United States v. Manning, 704 F.3d 584, 586 (9th Cir. 2012).  Specifically, it went directly to an element of the conspiracy count concerning whether Kesoyan joined in the conspiracy knowing of its goals and intended to help accomplish them, and Kesoyan's professed lack of knowledge was central to her entire defense.  Further, Kesoyan's demeanor while giving this testimony evinced that the testimony was "willfully" given.  Kesoyan "consciously act[ed] with the purpose of obstructing justice" when she gave the testimony.  United States v. Lofton, 905 F.2d 1315, 1317 (9th Cir. 1990).

        The United States is also correct in its following statements about the second lie; specifically, that Kesoyan lied when she testified she was coerced into confessing, and that this lie "was material because it was another attempt to directly negate Kesoyan's criminal culpability."  Id. at 7:1-2.  As the United States correctly asserts:

> [Internal Revenue Service] Special Agent Christopher Fitzpatrick testified that Kesoyan was interviewed about her conduct on November 20 and 21, 2014.  Kesoyan was advised that the interviews were voluntary and signed a Garrity waiver form each day stating she understood that the interview was voluntary, that she was willing to make a statement, and that no pressure or coercion of any kind had been used against her.  Exhibit 8.  During the interviews, Kesoyan admitted . . . that the address she used on the third SSA letter was false, that she knew Movsesyan did not live in Sacramento when she typed the letter, that she induced

3

> Bagdasaryan to sign the false notarized affidavit, and that she knew the false documents would be used for immigration purposes. Exhibit 7. Special Agent Fitzpatrick testified that no one threatened Kesoyan or her family and that no one yelled at Kesoyan during the interview.
>
> Kesoyan testified, however, that during the interviews agents threatened her and her family and yelled at her. Exhibit 1 at 23, 110-11. Kesoyan stated that she only told the agents that she had engaged in fraud because of this intimidation. Id. at 24-25, 112. Kesoyan's demeanor in testifying about her interview was not credible. She feigned . . . [being] emotional[ly] upset. When asked questions on cross-examination, Kesoyan accused counsel for the government of threatening her "just like FBI agents did." Exhibit 1 at 68. . . . In returning a conviction, the jury [evidently] agreed that Kesoyan's testimony was false. Kesoyan willfully and intentionally lied about her confession in order to undermine the government's evidence and support her perjured defense.

Gov't's Sent. Memo. at 7:2-20. When Kesoyan testified falsely that she confessed only because she was threatened and yelled at during her interview, this testimony was material because if it was believed, it would tend to influence or affect the issues under determination; specifically whether Kesoyan's statements given to the federal law enforcement officers were untrue because they were the product of federal law enforcement officers' pressure or coercion. Further, Kesoyan's demeanor while giving this testimony evinced that the testimony was "willfully" given with intent of obstructing justice.

The United States also formally objects to the refusal of the probation officer to include in the PSR a two offense level enhancement under United States Sentencing Guidelines

4

("USSG") § 2J1.2(b)(3). Gov't's Formal Objs. to PSR at 1:18-21. USSG § 2J1.2(b)(3) states in pertinent part: "If the offense . . . (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter . . . , increase by 2 levels."

The United States made an informal objection to the probation officer charged with drafting the PSR, but the probation officer declined to include the two-level enhancement. In a letter responding to the United States' objections and attached to the final PSR, the probation officer explains:

> <u>Application of USSG § 2J1.2(b)(3)(B) and (C)</u>: You state a two-level increase is warranted for the offense involving essential or especially probative records and was otherwise extensive in planning, preparation, or scope pursuant to USSG §2J1.2(b)(3)(B) and (C). You provide specific details regarding offense conduct that you feels (sic) supports this enhancement.
>
> <u>Probation Officer's Response</u>: A representative with the United States Sentencing Commission (hereafter referred to as The Commission) was contacted regarding specific offense characteristics that support the application of the two-level increase under USSG §2J1.2(b)(3). The Commission cited the origin of USSG § 2J1.2(b)(3) is contained in Amendment 647 and was repromelgated in Amendment 653 of the Amendments to the 2003 Guideline Manual. Congress gave The Commission emergency amendment authority to promulgate amendments addressing, among other things, obstruction of justice offenses that involved the destruction of evidence. Specifically, section 805(a) of the Sarbanes-Oxley Act of 2002 directed The Commission ". . . to ensure that the base offense level and existing enhancements in USSG § 2J1.2 are sufficient to deter and punish obstruction of justice offenses generally, and specifically are adequate in cases involving the destruction, alteration, or fabrication of a large amount of evidence, a large number of participants,

> the selection of evidence that is particularly probative or essential to the investigation, more than minimal planning . . . ." Section 1104(b) of the [Sarbanes-Oxley Act] further directs The Commission to ensure the "guideline offense levels and enhancements for an obstruction of justice offense are adequate in cases where documents or other physical evidence are actually destroyed or fabricated."" (sic) The facts of Mrs. Kesoyan's case do not fit the criteria or intent of The Commissions application of this Guideline enhancement. There is no evidence provided that indicates Mrs. Kesoyan obstructed justice by destroying or fabricating evidence; therefore, the two-level increase pursuant to USSG §2J1.2(b)(3) was not applied.

Response to Objections at 2, ECF No. 210-1.

> The United States argues:
>
> Kesoyan not only used her position in the Social Security Administration ["SSA"] to create three false letters for Movsesyan, but she altered his address in SSA electronic database records in order to provide support for the false statements she made in the letters. Before Kesoyan changed these records, they showed that Movsesyan had lived in Burbank for years. As testimony at trial indicated, the address records in the SSA database are important to ensuring the SSA has accurate information in order to provide services and prevent fraud. These records were especially probative of Movsesyan's actual address. They were altered to support the false addresses used in the SSA letters and to deceive anyone who may later look at SSA records to determine whether Movsesyan actually lived at the address listed. Indeed, changing Movsesyan's address in the SSA records was essential to covering up the false address Kesoyan listed in the SSA letters. As Kesoyan admitted at trial, she knew investigators would look into the address listed on the letters. In order for Kesoyan to conceal the false nature of the address, it was essential for her to change the SSA records themselves. . . .
>
> . . . .

6

> The U.S. Probation office did not apply a two-level increase under § 2J1.2(b)(3) in the revised PSR. In response to the government's request to include the specific offense characteristic, the officer stated it did not apply because that there was no evidence Kesoyan obstructed justice by destroying or fabricating evidence. ECF No. 210-1 at 2. This is incorrect.
>
> Obstruction of justice need not necessarily involve obstructing a currently pending criminal investigation. As the Sentencing Commission notes, "[n]umerous offenses of varying seriousness may constitute obstruction of justice" including "obstructing a civil or administrative proceeding." § 2J1.2 App. N. Background. Kesoyan was convicted of conspiring to obstruct or impede a pending agency proceeding. This substantive criminal offense, 18 U.S.C. § 1505, is located in the Obstruction of Justice chapter (Chapter 73) of the U.S. Code. An administrative investigation is a proceeding within the meaning of this obstruction offense. [United States] v. Price, 951 F.2d 1028, 1031 (9th Cir. 1991). Specifically, naturalization and immigration investigations are proceedings that fall within the statute. See United States v. Jacques Dressange, Inc., 4 Fed. App'x 59 (2d Cir. 2001); United States. v. Naeem, 389 Fed App'x 245 (4th Cir. 2010).
>
> Here, Kesoyan actively obstructed an administrative proceeding of the [United States Citizenship and Immigration Services ("USCIS")] through the fabrication of documents and otherwise. She not only told individuals to lie to immigration officers, but she also produced false documentary evidence that would interfere with USCIS officers' attempts to determine whether Movsesyan lived in Sacramento.

Gov't's Formal Objs. to PSR at 2:28–5:11.

> Defendant responds:
>
> Contrary to the Government's position, the Probation Officer's determination under USSG § 2J1.2 is correct. The SSA letters, the address listed in the SSA's database, and the single affidavit are quite far from

7

> "essential or especially probative" documents regarding that specific information. Perhaps the creation of a dispositive document such as a counterfeit driver's license, a passport or other government-issued identification might amount to "essential or especially probative" records under § 2J1.2. However, SSA correspondence and database address of record established only that Movsesyan provided that address to SSA, and can hardly be deemed particularly probative or essential to establishing his residence.

Reply at 3:1–10, ECF No. 215.

Defendant's argument is unpersuasive. In United States v. Mathews, 874 F.3d 698, 705 (11th Cir. 2017), the Eleventh Circuit held "that [an] increase was proper under § 2J1.2(b)(3)(B)" where a Veterans Affairs ("VA") hospital nurse falsified entries in a patient's medical chart that were essential "to the VA's investigation into the Patient's quality of care and would furnish, establish, or contribute toward proof (i.e., be especially probative) on that point." Id. It was "clear that [the nurse] 'selected' the Patient's medical record as the target of his alterations in order to derail and deceive that investigation." Id. The facts of the instant case are similar in important respects. It is clear that Defendant selected the SSA record, which would contribute toward proof of Movsesyan's address, as her target in order to mislead USCIS investigators, and Defendant knew that record would be especially probative in the USCIS proceeding and Defendant changed the address so that the change would be consistent with what Movsesyan told an USCIS official was his northern California address. The United States has shown that the obstruction-of-justice rationale applicable to USSG § 2J1.2(b)(3) is not as

narrow as the probation officer determined when declining to apply the two-level enhancement.

Since a two-level enhancement is appropriate under USSG § 2J1.2(b)(3)(B) ("[T]he offense . . . involved the selection of an[] essential or especially probative record . . . to . . . alter . . . ."), the United States' additional arguments in support of the applicability of USSG § 2J1.2(b)(3)(C) ("[T]he offense . . . was . . . extensive in scope, planning, or preparation . . . .") need not be addressed.

The probation officer calculated in the PSR that Defendant's total offense level is 23, PSR ¶ 34, and Defendant's criminal history is category I, PSR ¶ 43, resulting in an advisory guideline imprisonment range of 45-57 months, PSR ¶ 71. However, sustaining the United States' objection increases Defendant's offense level to 25, and the advisory guideline imprisonment range to 57-71 months.

A copy of these findings and ruling shall be appended "to any copy of the presentence report made available to the Bureau of Prisons." Fed. R. Crim. P. 32(i)(3)(C).

Dated: April 26, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

9