UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:15-cr-236-JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |
| NELLI KESOYAN, | |
| Defendant. | |

Before the Court is Defendant Nelli Kesoyan's ("Defendant") Motion for Compassionate Release. Mot., ECF No. 280. Defendant obtained appointed counsel and supplemented her pro se motion. Supp. Mot., ECF No. 283. The United States ("Government") filed an opposition. Opp'n., ECF No. 284. Defendant filed a reply. Reply, ECF No. 285. For the reasons set forth below the Court GRANTS Defendant's motion.

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendant was convicted by a jury on two counts: (1) conspiracy to make false statements in a matter relating to naturalization and citizenship, and (2) one count of making a false entry in government records. Verdict Form, ECF No. 183.

Defendant has no prior criminal history. Supp. Mot. at 2. The presiding court sentenced her on April 27, 2018 to 57 months on each of the two counts to be served concurrently for a total term of 57 months imprisonment; 12 months supervised release; and $200 special assessment. Judgment, ECF No. 233. (Defendant went into custody on January 18, 2018.) She is presently incarcerated at the Federal Prison Camp ("SCP Dublin"), a minimal security institution in Dublin, California. Id. Her anticipated release date is February 17, 2022. Id.

On November 30, 2019, Defendant filed a Request for Compassionate Release/Reduction in Sentence (RIS) pursuant to 18 U.S.C. § 3582(c)(1)(A) with the Warden at SCP Dublin.[1] Mot. at 1; See also Mot., Exh. 4, RIS at 18. Defendant argued the "extraordinary and compelling circumstance[]" that her son was "without the necessary qualified caregiver" warranted her immediate compassionate release. RIS at 18-20. In accordance with her request, the United States Probation Office approved her supervision release plan to live at her family home upon release. Supp. Mot. at 3. While awaiting a response from the Warden, Defendant sent two emails in March to the Associate Warden of Operations, asking that the Warden please consider "the newly added jeopardy [her son] faces" as a result of COVID-19. Mot., Exh.1 at 9; Mot., Exh. 3 at 11.

The Warden denied her request on March 18, 2020. Mot., Exh. 4, Response to Inmate Req. at 12. Defendant did not appeal.

---

[1] In her motion, Defendant states she filed her Request for Compassionate Release/RIS with the Warden on December 11, 2019. However, her Request is dated November 30, 2019.

2

Opp'n at 7. Defendant now asks this Court to reduce her sentence for the same extraordinary and compelling circumstances, to a period of time served, plus the one-year period of supervised release already imposed. Supp. Mot. at 15. Moreover, Defendant argues these existing circumstances are worsened by the current COVID-19 pandemic. Id.

## II.   OPINION

### A.   Legal Standard

A court may generally "not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 824-25(2010). Passed in 2018, the First Step Act (FSA) modified 18 U.S.C. Section 3582 to grant federal courts such authority under certain exceptions. 18 U.S.C. § 3582(c)(1)(A). To file a motion for modification with the court, a Defendant must first submit a request for release with the Bureau of Prisons ("BOP"). Id. A defendant must then exhaust administrative remedies by either (1) administratively appealing an adverse result or (2) waiting for 30 days to pass. Id. Only then may a Defendant, or the Director of the BOP, file a motion for modification. Id. The court can then modify the term of imprisonment after considering any relevant factors set forth in Section 3553(a), and if it finds, in relevant part, that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

### B.   Analysis

#### 1.   Exhaustion Requirement

The parties do not dispute that well over 30 days have

3

1  passed since Defendant filed her request for compassionate
2  release with the BOP.  Nonetheless, the Government argues
3  Defendant has not exhausted her administrative remedies since
4  she now raises issues related to COVID-19 that were not present
5  in her initial request.  Opp'n at 9. The Government contends
6  this deprives the Court of jurisdiction, since "the issues
7  raised here are [not] sufficiently similar to those raised with
8  BOP."  Id.  The Court disagrees.
9     Although the exhaustion requirement is explicit in section
10 3582(c), some district courts have held they may waive this
11 requirement in light of the emergency circumstances caused by
12 the current COVID-19 pandemic.  See, e.g., U.S. v. Zukerman, No.
13 16-cr-194, 2020 WL 1659880, at *3 (S.D.N.Y April 3, 2020)
14 (finding exhaustion requirement is not "absolute" and
15 delineating three circumstances where it may be excused); U.S.
16 v. Colvin, No. 19-cr-179, 2020 WL 1613943, at *2 (D. Conn. April
17 2, 2020)(finding the same).  A court in this district has held
18 the opposite.  See U.S. v. Meron, No. 2:18-cr-0209, 2020 WL
19 1873900, at *2 (E.D. Cal. April 15, 2020) (finding "it is bound
20 by Ninth Circuit's holding that 'while judicially created
21 exhaustion requirements may be waived by the courts for
22 discretionary reasons, statutorily provided exhaustion
23 requirements deprive the court of jurisdiction, and thus,
24 preclude any exercise of discretion by the court'").  The Court
25 need not address this issue, however, because it finds Defendant
26 has complied with the exhaustion requirement.
27    The Government relies on an immigration case to argue that
28 Defendant needed to have previously raised the issue of

COVID- 19, to properly exhaust her administrative remedies. Opp'n at 9 (citing Amaya-Granados v. I.N.S., 133 F.3d 925, at *2 (9th Cir. 1998)). In Amaya-Granados, the petitioner initially sought asylum on account of "his imputed political opinion." 133 F.3d at *1. The Board of Immigration Appeals (BIA) denied his application for asylum. Id. While on remand from the Ninth Circuit, he submitted new evidence regarding a law from his country of origin. Id. at *2. The Ninth Circuit inferred from this that he was attempting to add a new claim of persecution as part of a particular social group, which is an entirely distinct basis for asylum. Id. Since he did not initially raise that claim, the court found raising it at this stage would mean he did not properly exhaust his administrative remedies. Id.

The Government's reliance on Amaya-Granados is misplaced and the comparison of that case to the instant case is tenuous at best. Defendant here is not introducing a whole new claim as a reason for modifying her sentence. Instead she maintains that the extraordinary and compelling circumstance of needing to care for her son is the sole reason warranting a reduction in her sentence. Reply at 3. The only thing that has changed since her initial request, is that the COVID-19 pandemic has taken the globe by storm. As the Government must concede, the pandemic had not yet developed in November 2019. Id. at 7. Accordingly, it was impossible for Defendant to raise this non-existent concerns in her BOP request.

But even so, she does not argue COVID-19 provides an entirely new reason to grant her release. Instead, she merely argues COVID-19 is a "fact" that makes the already existing

circumstances "more dire." Id.  Moreover, this is not the first time Defendant makes this assertion.  As the pandemic first developed, Defendant raised the issue of COVID-19 to the Assistant Warden of Operations when inquiring about the status of her request.  The Government acknowledges that Defendant sent two emails in March, in which she asked the Associate Warden of Operations to consider how COVID-19 was impacting her family's circumstances.  Opp'n at 7 n. 1.

Accordingly, the Court finds Defendant's arguments in this motion are sufficiently similar to those raised in her request to the BOP.  Because more than 30 days have passed since Defendant filed her initial request, Defendant has met the threshold exhaustion requirement.  The Court may therefore address the merits of her claim.

### 2.   Sentencing Factors

In deciding a motion for compassionate release, a court must consider the relevant factors set forth in 18 U.S.C.A. Section 3553.  18 U.S.C. § 3582(c)(1)(A)(i).  The Government does not argue Defendant's release would implicate the sentencing factors.  Instead, it asks the Court to consider Defendant's "credibility and past history of lying before the court" in determining how much weight to give to the statements made by Defendant in support of her motion. Opp'n 14-15.  The Court finds Defendant's statements here to be credible and is persuaded by her argument that the sentencing factors "would not be undermined" by her release.  Reply at 10.  Given the nature of her crime, the Court is convinced Defendant does not pose a danger to "the safety of any person or her community."  Id.

3.  <u>Extraordinary and Compelling Circumstance</u>

After a defendant has met the threshold exhaustion requirement, a court may grant the motion if it finds "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." <u>Id.</u> Congress has not defined what constitutes an "extraordinary and compelling" reason other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, it has delegated that responsibility to the Sentencing Commission. <u>Id.</u> Before the FSA was passed, the Commission concluded "extraordinary and compelling reasons" were limited to four scenarios. U.S.S.G. § 1B1.13. These scenarios include: (A) the medical condition of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) a catchall provision. <u>Id.</u> Relevant here are the last two provisions.

The BOP considered Defendant's request under Subdivision (C) for family circumstances. Mot., Exh. 4 at 12. That provision provides in relevant part that "the death or incapacitation of the caregiver of the defendant's minor child" constitutes an extraordinary and compelling family circumstance. U.S.S.G. § 1B1.13. As the BOP concluded, Defendant does not meet these criteria because although her adult child has a "mental age of approximately 12 years old," he is not a minor and his current possible caregivers have not died or been incapacitated. Mot., Exh. 4 at 12. Defendant therefore asks the Court to consider her family circumstances under the

7

catchall provision, i.e., Defendant contends that her family situation is extreme and constitutes an "other" extraordinary and compelling reason for compassionate release based on family circumstances. Reply at 8.

### a. Subdivision (D)

As written, Subdivision (D) allows the Director of the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with the reasons described in subdivision (A) through (C)." U.S.S.G. § 1B1.13(D). In other words, the policy statement vests the discretionary authority for the catchall provision entirely with the Director of the BOP. Since the Sentencing Commission has not yet harmonized its policy statements with the FSA, this Court must decide whether it also has discretion to grant compassionate release under Subdivision (D). The Government argues that this Court lacks such authority. Id. Defendant, on the other hand, maintains such a conclusion would be "inconsistent" with the FSA. Supp. Mot. at 6; Reply at 5-6. The Court agrees.

In finding that this Court may order release in a case involving an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C), this Court follows a growing list of district courts within this circuit and others, that have concluded they also have discretion under Subdivision (D). See, e.g., U.S. v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17,2019); Rodriguez, 424 F.Supp. 3d 674; U.S. v. Chan, 96-cr-00094, 2020 WL 12527895 (N.D. Cal. March 31, 2020); U.S. v.

8

Almontes, No. 3:05-cr-58, 2020 WL 1812713 (D. Conn. April 9, 2020).

### b.   Defendant's Circumstances

Defendant argues her family circumstances are "extreme" and should be considered extraordinary and compelling under the catchall provision.  Supp. Mot. 6.  Defendant askes the Court for compassionate release so she may take care of her child, Haik Kesoyan.  Id. at 3.  Haik has cerebral palsy and is developmentally disabled.  Supp. Mot. at 8.  Although he is twenty-four years old, his treating therapist approximates his mental age to be twelve years old.  Id.  Accordingly, he needs assistance with daily activities such as: "dressing himself, bathing, []meal preparation, cleanup, routine laundry, and any outside errands."  Id.  Put simply, he is "[i]n no way" a "functional or independent adult."  Id. at 9.

Haik currently lives with his father, paternal grandmother, and older brother.  Id.  However, his father is not only disabled from a back injury, but also suffers from drug addiction.  Id.  He is therefore unable to adequately care for Haik.  Id.  Moreover, his paternal grandmother suffers from dementia and her kidney disease requires dialysis treatments twice-a-week.  Id.  Accordingly, Haik's older brother is the only functional adult in the house.  Id.  But since his grandmother requires full time attention, he is unable to properly care for Haik.  Id. at 11.

Although Haik also has an older sister, she cannot care for him because she lives separately, and looks after her own son and their maternal grandmother.  Id.  The current COVID-19

9

pandemic has furthered hindered her ability to care for Haik. Id.  Since both households have immunocompromised individuals and adults over 65 years old, his sister would risk infecting either him or their grandmothers if she traveled back-and-forth to care for him.  See *People Who Need to Take Extra Precautions*, *Coronavirus Disease 2019 (COVID-19)*, CENTERS FOR DISEASE CONTROL AND PREVENTION (last updated March 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

Now that Haik is no longer under the care of his mother, his condition and overall health have deteriorated.  Id.  His therapist has since diagnosed him with separation anxiety; his anxiety and ability to control his emotions have worsened.  Id. He is also exhibiting depressive symptoms, such as: lost appetite, isolation, and sleep disturbances.  Id. at 10.  Haik's other disabilities, such as speech impairments, have likewise worsened since Defendant's incarceration.  Id.  He also recently suffered an ear infection, resulting in a broken eardrum and the need for future surgery.  Id. at 9-10.  Because his family members cannot adequately care for him, his ear infection went unnoticed and untreated for some time.  Id. at 9.  Accordingly, Defendant asks the Court to reduce her sentence to time served so she may properly care for her son.

The Government argues these circumstances are neither extraordinary nor compelling.  Opp'n at 11-12.  In support of this argument, it relies on two cases that denied requests for compassionate release to provide for the welfare of a child. See U.S. v. Shields, No. 12-cr-00410-BLF-1, 2019 WL 2359231, at

*4 (N.D. Cal. June 4, 2019); U.S. v. Greenhut, No. 2:18-CR-0058-CAS, 2019 WL 6218952, at *3 (C.D. Cal. Nov. 21, 2019).  It argues that since those requests involved minor children, a request for an adult son is even more untenable.  Opp'n at 12.  But as Defendant points out, these cases are distinguishable.

In Greenhut, the defendant was seeking early release from his sentence for possession and distribution of child pornography, to care for his thirteen-year-old son living in the Philippines.  2019 WL 6218952, at *3.  Although the boy's mother was adequately caring for his son, defendant argued he should be released to protect his son from "third-world poverty" so he could grow to be a "first-world man."  Id.  The court denied the request finding it was rooted in harmful stereotypes and because every person in prison also desired the opportunity to be in their child's life.  Id.  In contrast, here, Defendant is not merely seeking the opportunity to be in her child's life in spite of the sentence imposed.  Rather, she is asking for the opportunity to care for her son now that his health has deteriorated as a direct result of her absence.

Although more comparable, Shields is also distinguishable.  In Shields, the defendant sought release to care for his fourteen-year-old daughter who suffered from epilepsy.  2019 WL 2359231, at *4.  Although his daughter's condition had fortunately not worsened, he argued his wife was unable to provide adequate supervision because she worked full-time.  Id.  The court denied his request, as "the same could be said of any inmate who has young children and a spouse who must work."  Id.

Here, on the other hand, Defendant's husband is not merely

11

a spouse who cannot attend to his child because he must work. Instead, he is unable to care for his son because he suffers from substance abuse and is disabled. The Government attempts to argue that because Haik's father was once a "wonderful stay-at-home dad," he can still properly care for Haik despite his addiction. Opp'n at 12-13. But this argument disregards the numerous studies indicating that parental substance abuse increases the risk of both short-term and long-term medical and psychological problems. See, e.g., Vincent C. Smith et. al., *Families Affected by Parental Substance Use, Clinical Report*, American Academy of Pediatrics (July 2016), https://pediatrics.aappublications.org/content/early/2016/07/14/peds.2016-1575. While Haik's father may have the best intentions of wanting to care for his disabled son, as Defendant points out, his drug addiction and physical disability have not been adequate to prevent Haik's deterioration. Reply at 9.

The Government argues Haik's sister can also care for him. Opp'n at 13-14. It contends she can avoid risking COVID-19 transmission in the family, if the two households simply "strict[l]y agree[]" to "reduce all outside contact." Id. at 14 (citing Kaitlyn Tiffany, "*The Dos and Don'ts of 'Social Distancing*,'" THE ATLANTIC (March 12, 2020), https://www.theatlantic.com/family/archive/2020/03/coronavirus-what-does-social-distancingmean/607927/). But the Government disregards that Haik's paternal grandmother requires twice-weekly visits to the hospital for her dialysis treatments. Supp. Mot. at 10. She therefore risks exposure to the virus at the hospital, which would further jeopardize the health of the

other grandmother if Haik's sister were forced to go back-and-forth between the two homes.  According to the CDC, 8 out of 10 deaths from COVID-19 reported in the U.S. have been in adults 65 years old and older.  See *People Who Need to Take Extra Precautions*, supra.  If someone in either household contracted the virus, it could have serious consequences for the grandmothers.  Haik's sister can therefore not adequately care for him without the risk of comprising their health.

Shields is further distinguishable because although the child required constant monitoring in the event of a seizure, 2019 WL 2359231, at *4, Haik requires more than just monitoring.  He requires constant supervision and assistance for every single task.  Moreover, unlike the child in Shields, Haik's health has significantly deteriorated in Defendant's absence.

The Court is persuaded by cases cited by Defendant in her supplemental brief, including U.S. v. Reyes, No. 04-CR-970, 2020 WL 1663129 (N.D. Ill. Apr. 03, 2020). Supp. Mot. At 7-8.  In Reyes, the defendant's aunt had stage four cancer.  Id. Managing her care was difficult for his family, so he sought release to help with her care.  Id.  Finding that Subdivision (D) was meant to "especially recognize non-traditional family arrangements and the need for others in the family to contribute when a relative is sick," the court granted his release.  Id. Here, too, Defendant asks this Court to consider her non-traditional family arrangements, as those arrangements do not presently allow for the adequate care of her son's health.  The Court finds that the evidence submitted by Defendant of Haik's deteriorating health in his mother's absence, constitutes an

13

extraordinary and compelling reason warranting a reduction in Defendant's sentence.

### III.   ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion for Compassionate Release and reduces Defendant's sentence to time served plus the one-year period of supervised release previously imposed. The Court further (partially) grants the United States' request for medical clearance prior to Defendant's release to minimize the possibility of any spread of COVID-19 from the Defendant to her family and the public. Medical clearance should be granted, if appropriate, forthwith.

IT IS SO ORDERED.

Dated: April 27, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

14